(162 App. Div. 385)

GOLDBERG v. PEOPLE'S SURETY CO. OF NEW YORK et al.

(No. 5704.)

(Supreme Court, Appellate Division, First Department. May 1, 1914.)

1. CARRIERS (§ 252*)—SALE OF TICKETS—BOND TO SECURE DEPOSITS.

A bond, in accordance with Laws 1907, c. 185, as amended by Laws 1908, c. 479, requiring all persons engaged in the state in selling tickets for transportation to or from foreign countries, who in conjunction therewith "receive money on deposit" or carry on the business of receiving deposits of money for transmission to foreign countries, to give a bond, conditioned for "the repayment of such deposits" and the faithful holding and transmission of any money deposited with them for transmission to a foreign country, covers savings accounts, as well as money deposited for transmission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1009, 1010, 1015; Dec. Dig. § 252.*]

2. CARRIERS (§ 252*)—SALE OF TICKETS—BOND TO SECURE DEPOSITS—LEGISLATIVE POWER.

The provision of Laws 1907, c. 185, as amended by Laws 1908, c. 479, requiring persons engaged in the state in selling tickets for transportation to or from foreign countries, who in conjunction therewith receive money on deposit, to give bond for its repayment, is within the power of the Legislature, for protection to a class liable to imposition and unfit to protect itself.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1009, 1010, 1015; Dec. Dig. § 252.*]

3. CARRIERS (§ 252*)—SALE OF TICKETS—BONDS TO SECURE DEPOSITS.

A bond under Laws 1907, c. 185, as amended by Laws 1908, c. 479, providing that all persons now or hereafter engaged in the state in selling tickets for transportation to or from foreign countries, who in conjunction therewith receive money on deposit, shall before entering into said business, or before continuing it, give a bond conditioned for repayment of such deposits, being conditioned to repay "any money received on deposit," covers money deposited before the bond was given, and allowed to remain after it became operative.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1009, 1010, 1015; Dec. Dig. § 252.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CARRIERS (§ 252*)—SALE OF TICKETS—BOND TO SECURE DEPOSITS—REPEAL
OF STATUTE.

    A bond under Laws 1907, c. 185, as amended by Laws 1908, c. 479, re-
quiring a bond of one engaged in the state in selling tickets to or from
foreign countries, who in conjunction therewith receives money on de-
posit, conditioned for its repayment, is chargeable with money deposited
while such provision of the law was in force, though allowed to remain
after it was repealed by Laws 1910, c. 348; it being expressly provided
"said repeal shall not affect any right already existing or accrued, or any
liability incurred prior to passage of this act."

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1009, 1010, 1015;
Dec. Dig. § 252.*]

Appeal from Judgment on Report of Referee.

Action by Benjamin Goldberg, on behalf of himself and others,
against the People's Surety Company of New York and another.
From a judgment for plaintiff, on the report of a referee appointed
to hear and determine, defendant company appeals. Affirmed.

See, also, 158 App. Div. 927, 143 N. Y. Supp. 1118.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and DOWLING, JJ.

Edward M. & Paul Grout, of New York City (Edward M. Grout,
of New York City, of counsel, and F. Sidney Williams, of New York
City, on the brief), for appellant.

Samuel Hoffman, of New York City (Herman Joseph, of New
York City, of counsel, and Alexander I. Hahn, of New York City, on
the brief), for respondent.

CLARKE, J. The action was brought by plaintiff in behalf of him-
self and other creditors of Morits Rosett similarly situated.

Rosett and the defendant company, as surety, gave a bond to the
people of the state in the sum of $15,000 on August 17, 1908. Said
bond recites:

"Whereas, Morits Rosett, the above-bounden principal is engaged or is about
to engage within this state in the selling of steamship or railroad tickets for
transportation to or from foreign countries and in conjunction with said busi-
ness, receives or is about to receive money on deposit or carries on or is about
to carry on the business of receiving deposits of money for the purpose of
transmitting the same, or the equivalent thereof, to foreign countries, and is
required to make, execute and deliver a bond pursuant to chapter 185 of the
Laws of 1907, as amended by chapter 479 of the Laws of 1908:

"Now the condition of this obligation is such, that if the above-bounden
Morits Rosett shall faithfully and diligently hold and transmit any and all
moneys or the equivalent thereof, which shall be delivered to it or them for
transmission to a foreign country or countries, and repay any money received
on deposit as provided by said chapter 185 of the Laws of 1907, as amended
by chapter 479 of the Laws of 1908, and duly account for and promptly pay
over all moneys or the equivalent thereof, received by it or them as aforesaid,
then this obligation to be void, otherwise to remain in full force and virtue.
In default thereof the parties hereto will pay all damages, costs and expenses
resulting from such default, not exceeding the sum above specified."

Thereafter the bond was duly approved and filed by the State Comp-
troller, and the said Rosett was authorized to and did engage in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

business of selling steamship tickets, and, in conjunction with said business, received money on deposit for safe-keeping, as well as received money for the purpose of transmitting the same or the equivalent to foreign countries. The referee has found that during the years 1908 and 1909 and up to August 31, 1910, and after the making of the said bond, the plaintiff and the other claimants enumerated delivered to said Rosett the various sums set forth upon the agreement, condition, and understanding that the same was to be returned upon demand with any and all interest accrued.

In March, 1912, Rosett was duly adjudicated a bankrupt. Neither he nor his estate has ever paid plaintiff or any of the claimants any of the moneys so deposited, except that the trustee in bankruptcy has paid two dividends of 38 per cent. and 2 per cent., he has failed to duly account to the said plaintiff or any other claimants for any of the moneys so delivered to him for safe-keeping, and has wrongfully and willfully and knowingly retained the same to his own use.

Schedules are attached showing 105 different claimants, and the several amounts of their claims. Judgment was given for the amounts found to be due, and the surety company appeals.

[1, 2] The first claim of the appellant is that the bond in question did not cover savings accounts; that it was the receipt of money in conjunction with the business of selling steamship or railroad tickets and for the purpose of transmitting the same which alone was provided for.

The original statute (chapter 185 of the Laws of 1907) governing the subject provided as follows:

"All corporations, firms and persons now or hereafter engaged in the selling of steamship or railroad tickets for transportation to or from foreign countries, who in conjunction with said business carry on the business of receiving deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries, shall, before entering into said business, or before continuing said business, except as hereinafter provided, make, execute and deliver a bond to the people of the state of New York in the sum of fifteen thousand dollars, conditioned for the faithful holding and transmission of any money, or the equivalent thereof, which shall be delivered to it or them for transmission to a foreign country."

Under that statute it might be fairly arguable that its provisions applied only to the receiving of deposits of money for the purpose of transmitting the same to foreign countries by persons engaged in the selling of steamship or railroad tickets for transportation to or from such countries. But chapter 479 of the Laws of 1908 amended said act so as to read as follows:

"All corporations, firms and persons now or hereafter engaged within this state in the selling of steamship or railroad tickets for transportation to or from foreign countries, who in conjunction with said business receive money on deposit or carry on the business of receiving deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries, shall, before entering into said business, or before continuing said business, except as hereinafter provided, make, execute and deliver a bond to the people of the state of New York in the sum of fifteen thousand dollars, conditioned for the repayment of such deposits and the faithful holding and transmission of any money, or the equivalent thereof, which shall be delivered to it or them for transmission to a foreign country."

This court said in Musco v. United Surety Company, 132 App. Div. 300, 117 N. Y. Supp. 21:

"The Legislature could well take notice of the frequent embezzlements and misappropriations by trans-Atlantic ticket agents of funds intrusted to them for transmission by their fellow countrymen, and that ignorant emigrants were more likely to intrust money for transmission to their home countries to the men who had had charge of the transporting of themselves or their friends than through regular banking institutions. For the purpose of preventing imposition and fraud and crime, and promotion of the public welfare, the Legislature had the right to enact a law regulating the carrying on of such business and imposing as a condition the giving of a bond in any reasonable amount."

In affirming (196 N. Y. 459, 90 N. E. 171, 134 Am. St. Rep. 851), the Court of Appeals said:

"The regulation of the business of receiving deposits is plainly within the power possessed by the state to regulate the conduct of various pursuits when necessary for the protection of the public. * * * We doubtless may take judicial notice of the public report made by the commission of immigration recently appointed by the Governor to inquire into the condition and welfare of aliens in this state, and by which report it appears that there has been a special disposition on the part of the ignorant aliens to deposit for transmission abroad moneys with irresponsible persons who carried on the business of selling steamship tickets; that the latter branch of business naturally attracted the former branch, which resulted in widespread frauds upon and losses by the ignorant depositors. Even if we should ignore this report, we might readily assume that the Legislature had knowledge of the very conditions presented by it, and therefore were justified in selecting for regulation the class of persons whom.it did select."

The reasoning by which regulation of this peculiar business—that is, combination of ticket selling and private banking—was justified is equally applicable to the amended statute which clearly and unmistakably inserted, as a separate transaction, the receiving of deposits of money by persons engaged in selling steamship tickets. The receiving deposits of moneys for the purpose of transmitting the same is clearly differentiated from the provision for the receiving money on deposit by the disjunctive "or," and the condition of the bond is made for "the repayment of such deposits" as well as for "the faithful holding and transmission" of money delivered for transmission. The purpose of the act is protection to a class liable to imposition and unfit to protect itself. The evil aimed at, to wit, the misappropriation and embezzlement, is the same whether the ticket agent receives the money on deposit or for transmission. The purpose of the Legislature to broaden the scope of statutory control over persons engaged in such business is clear; the sole purpose of the amendment was to include money received on deposit. The statutory provision was within the power of the Legislature. The bond follows the statute, and the plaintiff is entitled to the benefit of the provision.

[3] The second point advanced by the appellant is that moneys deposited before the bond was given, but allowed to remain with Rosett after the bond became operative, are not recoverable against it.

This contention is answered by Russo v. Illinois Surety Co., 141 App. Div. 690, 125 N. Y. Supp. 991, which was an action on a bond

given under these statutes in September, 1908, to recover for moneys deposited before its passage. Mr. Justice Thomas said:

"If the business as to the future is a legitimate subject of cognizance by the state, there seems to be no reason for questioning its power to make its continuance dependent upon the establishment of its solvency as to past indebtedness arising from deposits. The continuity of the business affected both the past and future, and the moneys, whenever received, were combined in a general undertaking. * * * Therefore, as the Legislature was exercising its power to regulate occupations, it could regard the pursuit as an indivisible undertaking and regulate it accordingly."

And concluded:

"The very business to be continued is that of selling tickets in conjunction with deposits received. What is may be continued; what is not may be begun. Such is the intent of the statute. In concluding that the bond embraces the money in action, it may be remarked that the obligation of the bond is not broader than the scope of the statute."

[4] The third point made is that moneys allowed to remain after the law under which the bond was given became inoperative September 1, 1910, are not chargeable to the bond or covered by it.

Chapter 479 of the Laws of 1908 was carried into the Consolidated Laws without change as article 10 of the General Business Law (chapter 20, Cons. Laws; chapter 25, Laws of 1909). In 1910 by chapter 348 a new article, 3a, governing private bankers, was added to the General Business Law, and by chapter 349, article 10 of said General Business Law was amended to take effect September 1, 1910. By these new acts a separation was made and new bonds were required, and it is appellant's claim that moneys which were continued to be held were in the same position as new deposits, and therefore it is not responsible therefor, and relies upon Vidi v. United Surety Co., 155 App. Div. 502, 140 N. Y. Supp. 612. But that case has no application, as the facts were entirely different. This court held that the act of 1908 repealed the act of 1907 and required a new and different bond to be given and filed on or before September 1, 1908. In addition thereto, the surety company had notified the bankers that the bond which it had given under the law of 1907 would not be continued after September 1st, and would be canceled as of that date, and it also so notified the Comptroller. The plaintiff's deposit was made on September 13th, 13 days after the liability on the bond had expired by limitation of the act and by notice given, and we held:

"This the plaintiff was bound to know, and for that reason when he made the deposit on September 13, 1908, he in no way relied upon the bond upon which the liability is here sought to be predicated."

But in the case at bar none of the deposits were made after the 1st of September, 1910, and section 2 of chapter 346 of the Laws of 1910 provides:

"Article ten of such chapter is hereby repealed, but said repeal shall not affect any right already existing or accrued, or any liability incurred prior to the passage of this act."

The obligation of the bond is not that Rosett and the surety company should account up to August 31, 1910, but that they shall duly account for and promptly pay over. The moneys were received prior

to the 1st of September, 1910, and hence the obligation to account and pay over was incurred, and until that duty is duly performed the appellant is liable under its bond. Being a contract liability, it could not have been affected by subsequent legislation, for such legislation would have been violative of article 1, § 10, subd. 1, of the Constitution of the United States; but no such legislation was attempted, for, as pointed out, existing liabilities were expressly preserved. We have considered all the matters urged by the appellant upon this appeal and find no reversible error in the record.

The judgment appealed from should be affirmed, with costs to the respondent. All concur.