ANGELO LEGNITI, Appellant, *v.* THE MECHANICS AND METALS
NATIONAL BANK OF NEW YORK and Others, Respondents.

First Department, January 10, 1919.

**Trust — constructive trust — foreign exchange or credit — delivery
of check to private bankers in consideration of their establishing
credit in foreign bank which they failed to do — right to proceeds
of check in possession of bank where it was deposited.**

Where one desiring to have a certain amount of money placed to his credit
with a bank in Italy, delivered a check and cash to a firm of private bankers
upon their agreement to arrange by cable the payment for said person's
account to the Italian bank, but said bankers failed to perform the agree-
ment and the next day executed a general assignment, a constructive trust
arose in favor of the drawer of the check in the possession of the bank in
which it was deposited.

The relation of the parties was not that of debtor and creditor.

SHEARN, J., dissented, with opinion.

APPEAL by the plaintiff, Angelo Legniti, from a judgment
of the Supreme Court in favor of the defendants, entered
in the office of the clerk of the county of New York on the
28th day of May, 1917, upon the decision of the court after
a trial at the New York Special Term.

*J. Charles Weschler*, for the appellant.

*Frank M. Patterson* of counsel [*John B. Loughborough* with
him on the brief], for the respondent The Mechanics and
Metals National Bank of New York.

LAUGHLIN, J.:

This is an action to impress a trust upon and for judgment
for the proceeds on deposit with the defendant bank to the
credit of A. Bolognesi & Co., the name under which Alessandro
Bolognesi and Aldo Bolognesi, his son, were doing business
as private bankers and brokers and carrying on an extensive
foreign exchange business,— its depositor, of a certified
check for $3,450, dated and certified February 10, 1914,
drawn by plaintiff on the State Bank of New York to his
own order and indorsed to the order of said depositor and
deposited to its credit with defendant bank and collected by
it the next day.

First Department, January, 1919.        [Vol. 186.

The plaintiff was a private banker and owing to the failure of a banker in Naples, Italy, it became necessary for him to transfer funds immediately by cable to the Banca Commerciale Italiana, Naples, in order to protect his account against overdrafts the next day, and he accordingly applied to one Mavagolini, a representative of A. Bolognesi & Co. in the absence of A. Bolognesi, Sr., who exclusively represented the firm in this transaction, from the office, stating these facts and saying that he would give an order for cabling 18,000 lire to his credit at said bank on condition that it be cabled that night. Mavagolini promised to do so and said he would prepare the application and that on Bolognesi's return would draw his attention to the fact that the money must be cabled this night, and he did so and Bolognesi thereupon promised to cable the money that night. Shortly before six o'clock that evening, a messenger sent by Mavagolini called on plaintiff with a memorandum as follows:

" Mr. Angelo Legniti

    " Bought of A. Bolognesi & Co.,

        " 52 Wall Street.

" Cable Transfer to Italy
    to pay by Cable to Banca Commerciale Italiana, Napoli

" Advice to be forwarded by Cable from New York.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" Lire 18,000. . . . . . . . . . . . . . . . . . . . at 5.19⅛    $3462.37

    " Cabling. . . . . . . . . . . . . . . . . . . . . . . . . . . .    $    1.24

" Paid (ck 3450.    ────────────

    "" (cash 13.61                                    $3463.61

" Bolognesi & Co.        Payments required in Cash or

    " Maselli            Certified Cheques, otherwise order

" Feb. 10, 1914.   (ck)   if accepted, will be executed after
                          collection of cheque.

" It is fully understood and agreed that no liability shall attach to us nor to our correspondent for any loss or damage in consequence of any delay or mistake in transmitting this message or for any other cause beyond our control."

Plaintiff thereupon delivered the check to the messenger and $13.61, the balance, in cash. Bolognesi at that time had either money or credit with the bank in Italy to which

the money was to be payable, and in such circumstances the custom was to cable directions to the bank to pay the money to the person purchasing the credit, but that was not done, and the firm failed, and executed a general assignment to defendant Gilbert the next day. The check bears the erroneous indorsement of the defendant bank that it was paid through the clearing house that day, although it was not deposited until the next day. At the close of business on February 10, 1914, there was a balance on deposit with the defendant bank to the credit of Bolognesi & Co. of $18,985.05, and that balance was increased by the deposit of the check in question and $6,241.65 in addition thereto and was reduced by three checks aggregating $732.94. It, therefore, appears that no part of the proceeds of the check in question was paid out by the defendant bank. At about four o'clock in the afternoon of the eleventh day of February a check was drawn by Bolognesi & Co. on the defendant bank for $24,033.93 in favor of the American Express Company for the purpose of purchasing 125,000 lire, but with no direction with respect to the disposition thereof. That check was not paid and the express company offered to return it to the assignee, but he refused to accept it. However, he brought an action against the defendant bank for the recovery of the entire balance of the assignor on deposit with the bank, including the amount of that check, and on the subsequent bankruptcy of Bolognesi & Co. that action was continued by leave of the Bankruptcy Court. A judgment in favor of the bank on the pleadings was affirmed by this court and by the Court of Appeals on the ground that the title to the assets had passed to the trustees in bankruptcy, and that if the assignee were permitted to maintain the action the bank's right of offset existing as against the trustees in bankruptcy for money advanced on discounts, acceptances and notes, which had not matured at the time of the failure of Bolognesi & Co., amounting to more than the balance to the credit of the bankrupt, would be defeated. (*Gilbert* v. *Mechanics & Metals Nat. Bank*, 176 App. Div. 915; 221 N. Y. 648.) In view of the erroneous date with respect to the deposit and collection of the check, the correctness of the finding that the bank had no notice or knowledge of plaintiff's claim when it accepted

the check for deposit is, at least, doubtful; but since the position of the bank has not been changed to its prejudice no ground of estoppel exists and, in the view I take of the case, that is not material.

I am of opinion that Bolognesi & Co. received the check in trust to procure a credit for plaintiff at the bank in Italy of 18,000 lire and that they could not acquire title to the proceeds of the check until that was done. The contract was not made on the theory that Bolognesi & Co. then had credit at said bank which was to be transferred to plaintiff. That did not enter into the negotiations and so far as appears the plaintiff did not know it. What the plaintiff desired and what Bolognesi & Co. undertook to do was to have 18,000 lire placed to his credit with said bank and that they did not do and made no attempt to do. The case is not analogous to the purchase of property for which payment is made in advance of delivery. If the transaction had been the purchase of property the plaintiff could have protected himself by requiring delivery or the delivery of evidence of title at the same time. The case would be one of agency if it involved the purchase of a credit by Bolognesi & Co. from another, and if not and it only involved a transfer of his own credit by cable, it would be analogous thereto, and in either case the proceeds of the check could be used only for the purpose for which it was delivered, and until or when the condition on which delivery was made was complied with the title thereto would not pass from plaintiff. Of course, it was not intended that the plaintiff's money should be transmitted or forwarded and deposited to his credit in Naples, for his was money current here and he delivered the check for our money to Bolognesi & Co. for the purchase of an equivalent amount of money current in Italy precisely as in *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276), wherein we sustained a charge of grand larceny against a banker and broker for appropriating American money delivered to him for the purpose of forwarding the equivalent in Austrian money. The failure of the defendant is that case to purchase and forward the foreign money does not differ on principle from Bolognesi & Co.'s failure to purchase or arrange for credit in foreign money. In the case at bar by the memorandum prepared by Bolognesi & Co.

evidencing the contract they undertook, for the check and cash delivered with it, to arrange by cable the payment for plaintiff's account to the Italian bank of 18,000 lire, and this they did not do. In the case of the purchase of a draft the purchaser receives the draft, which is what he desires, and he uses that himself; but here the plaintiff did not receive what Bolognesi & Co. undertook to procure for him, namely, the deposit of 18,000 lire to his credit in Naples. In the case at bar we are of opinion that the relation of the parties was not that of debtor and creditor. There is no evidence of an intention on the part of plaintiff to extend credit to Bolognesi & Co. The respondent relies on *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.* (172 App. Div. 16), but there the nature of the transaction and the facts were stipulated, and it was not submitted to the court to decide the nature of the transaction. The stipulated facts there show that the plaintiff purchased of the defendant a cable transfer of money and the money had been transferred but there had been delay in transferring it, and at the time the credit was actually established in favor of the plaintiff in Italy the cost of such a transfer was considerably less than at the time the transfer was purchased. The plaintiff accepted the credit and sued to recover the difference between the rate of exchange at the time of the purchase of the transfer and at the time the credit was actually given abroad and also interest on the money. It was held that the plaintiff was entitled to the interest but not to the difference in the rate of exchange, for it accepted the transfer as made. In the opinion, by way of illustration and argument, it was stated that the transfer was complete when the cable transfer was sold and that the money paid therefor thereupon became the defendant's money and that the plaintiff received the defendant's obligation that payment would be made abroad. There the delay in making the transfer had been by the cable company and the defendant was not at fault, and it was also stated by way of argument that if the rate of exchange had increased the defendant would have had no claim for the difference against the plaintiff. There are in our opinion, in that case, statements tending to sustain the respondent's contention, but the decision is to be limited to the facts upon which the adjudication was made, and is not

controlling here where Bolognesi & Co. received the plaintiff's money for the particular purpose of establishing a credit in favor of the plaintiff in said bank at Naples on the following day. We are of opinion that Bolognesi & Co. could only acquire title to the check or the proceeds thereof by using the same for the purpose intended, or on compliance with the condition upon which the check was delivered, which was to establish said credit in favor of the plaintiff. (See *People ex rel. Zotti* v. *Flynn, supra; Cutler* v. *American Exchange Nat. Bank,* 113 N. Y. 593; *People* v. *City Bank of Rochester,* 96 id. 32; *Goldberg* v. *People's Surety Co.,* 162 App. Div. 385.) Our subsequent decision in *Atlantic Communication Co.* v. *Zimmermann* (182 App. Div. 862) has no particular bearing here for there we held that the plaintiff was entitled to the return of money delivered for transmission to Germany by wireless telegraphy where, owing to the state of war, performance of the contract was prevented; but the questions as to whether the money was received in a fiduciary capacity or whether title thereto passed to the defendant were not presented for decision and no opinion was expressed thereupon. On the facts of the case at bar a constructive trust arose in favor of the plaintiff with respect to the proceeds of the check in the hands of the defendant. (*American Sugar Refining Co.* v. *Fancher,* 81 Hun, 56; 145 N. Y. 552; *New York & Brooklyn Ferry Co.* v. *Moore,* 102 id. 667; *Bank of America* v. *Pollock,* 4 Edw. Ch. 215; *Bryant* v. *Allen,* 54 App. Div. 500; *Medical College Laboratory* v. *N. Y. University,* 178 N. Y. 153; *Slayback* v. *Raymond,* 93 App. Div. 326; *Marvin* v. *Brooks,* 94 N. Y. 71; *Haight* v. *Haight & Freese Co.,* 112 App. Div. 475; *Lafort* v. *Carpenter,* 91 Hun, 76; *Lightfoot* v. *Davis,* 198 N. Y. 261; *Jaffe* v. *Weld,* 155 App. Div. 110; affd., 208 N. Y. 593.)

It follows that the findings of fact and conclusions of law inconsistent with these findings should be reversed and appropriate findings and conclusions made in accordance therewith and the judgment reversed, with costs to appellant and judgment entered in favor of plaintiff for the relief demanded, with costs.

CLARKE, P. J., SMITH and MERRELL, JJ., concurred; SHEARN, J., dissented.

MERRELL, J. (concurring):

I concur in the opinion of Mr. Justice LAUGHLIN, but it seems to me that there are additional grounds for reversal.

While the trustee in bankruptcy is a party to the action, there is no controversy between the plaintiff and such trustee. The trustee has no interest in the funds in question. (See opinion of GIEGERICH, J., in *Gilbert* v. *Mechanics & Metals Nat. Bank;** affd., 176 App. Div. 915; affd., 221 N. Y. 648.) So the only parties in interest are the plaintiff and the Mechanics and Metals National Bank of New York, both of whom are seeking to obtain the sum involved in this action. The foundation of the claims of both of these parties is in equity, the defendant Mechanics and Metals National Bank claiming the right to retain the deposit on the doctrine of setoff, and the plaintiff on the ground that the proceeds of his check now remain on deposit in the Mechanics and Metals National Bank of New York, and that as between that bank and the plaintiff, on the principles of equity, the plaintiff is entitled to receive the money. It is very clear that the aforesaid bank never relied on this deposit in extending credit to A. Bolognesi & Co., and also that the deposit is the actual money received from plaintiff's check. The rights of the defendant bank are dependent entirely upon the doctrine of equitable setoff, which has, to a certain extent, been recognized by the Bankruptcy Law. The interests of other creditors and those of the trustee in bankruptcy are in no respect involved in this action. To permit the defendant bank to lay hold of that portion of the deposit which is without any question the proceeds from plaintiff's check, would be contrary to equity. Therefore, it seems to me that, on principles of equity, the plaintiff, having traced the funds into the deposit in the defendant bank, is entitled to receive his money, and should not be deprived of it upon the theory of setoff, as asserted by the defendant bank, merely because the check happened to fall into the bank's possession as a depositary.

SHEARN, J. (dissenting):

The opinion of Mr. Justice LAUGHLIN, as it seems to me, fails to take cognizance of the basic fact that foreign exchange

* See 95 Misc. Rep. 364.— [REP,

First Department, January, 1919.                    [Vol. 186.

or credit is a subject of purchase and sale and not only may be but is commonly contracted for in the same manner and governed by the same laws as in the case of purchase of wheat, cotton or any other subject of commerce. When a merchant in New York wishes to discharge an obligation maturing in a foreign country he does not ordinarily forward foreign money, or procure it to be forwarded. He goes to a banker, or dealer in foreign exchange and buys credit, available in the foreign country and sufficient to discharge the obligation. The banker has various ways of making the credit available. He may purchase the bills of foreign merchants maturing here; he may direct his foreign branch or correspondent to pay the amount involved; he may deliver to the purchaser his draft for acceptance abroad. The method followed is immaterial to the purchaser of the exchange or credit. He has bought the credit and the seller has contracted to have the credit available at the time and place agreed. When the purchaser pays over the sum involved and in addition the agreed price of the exchange and the seller delivers a memorandum of the transaction, the bargain or contract is a completed transaction, and for failure to perform his contract and make the credit available the seller of the exchange is liable in damages, just as he would be for the breach of any other contract. The fact that the credit is to be available on the following day, thus necessitating the use of cable or wireless communication, can have no bearing upon the legal nature of the transaction.

The soundness of this position has complete sanction in the very recent decision of this court in *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.* (172 App. Div. 16), where Mr. Justice SCOTT, writing for a unanimous court, said: "The learned court from whose judgment this appeal is taken decided in favor of the plaintiff upon the theory that what defendant contracted to transmit was the identical money paid to it by the plaintiff, likening the case to one in which a common carrier had received ten trunks for transmission and delivered only nine of them. He was, therefore, of the opinion that the money paid to defendant remained the property of plaintiff until it or its equivalent had actually been paid over in Genoa, and that all plaintiff was entitled

to retain was the value in New York on November eleventh, at the current rate of exchange for cable transfers, of 75,000 lire in Genoa. We are of opinion that this decision rests upon an erroneous view of the nature of a cable transfer, and that the supposed analogy of a common carrier transmitting merchandise is not appropriate, for there was here no failure to deliver in Genoa the 75,000 lire contracted for, but only a delay in making such delivery. * * * The very term ' cable transfer ' precludes the idea that an actual transmission of money is contemplated. What the seller of a cable transfer does is to sell a sum of money, or a credit for a sum of money, payable at the place indicated in the contract. What the buyer does is to purchase a credit available at such place. In the present case the plaintiff bought 75,000 lire to be paid in Genoa. The transaction was a completed one, and plaintiff or its correspondent ultimately received precisely what defendant engaged should be received, to wit, 75,000 lire in Genoa. * * * As we regard the transaction it was complete on October twenty-third when the cable transfer was sold. The money paid for it became defendant's money against which plaintiff received defendant's obligation that payment would be made in Genoa. For a failure to comply with this obligation plaintiff might, under some circumstances, although not under those in this case, have an action for damages."

It is intimated that this was *dictum* and by way of argument. But the decision turned upon whether the transaction was complete when the cable transfer was sold.

Reference is made to *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276), wherein the court sustained a charge of grand larceny against a banker and broker who appropriated American money delivered to him for the purpose of forwarding its equivalent in Austrian money to a designated person in Vienna. There is an important distinction between such a transaction and a contract to sell a credit, available in a foreign country. In this case of the purchase of credit, to be made available by a cable transfer, there was, as Mr. Justice LAUGHLIN concedes, no intention " that the plaintiff's money should be transmitted or forwarded and deposited to his credit in Naples." In the *Zotti* case the intention was that

the money delivered to the broker should, to the extent of its equivalent in Austrian money, be forwarded to a designated person in Vienna. That was the specific use that the broker agreed to make of the money (as in *Cutler* v. *American Exchange Nat. Bank,* 113 N. Y. 593), and when he appropriated it to his own use he was a defaulting trustee. The form of the receipt given showed that the money was received for the specific purpose of being forwarded. Here there was no such receipt or agreement. Instead there was delivered a memorandum showing that the plaintiff had "bought of A. Bolognesi & Co." a "cable transfer to Italy" in the sum of 18,000 lire. Yet, although the transaction was complete, as held in the *Strohmeyer* case, when the money and the cost of the exchange were paid to the banker and the memorandum given, it is said that the banker would not get title to the check until he had actually established the credit in Italy. If the transaction was complete when the credit was purchased and paid for and the memorandum delivered, and if a binding sale of credit was then made from which neither party could withdraw, as held in the *Strohmeyer* case, I fail to see why title to the check, or its proceeds, was not immediately vested in the seller of the credit, just as it would be on a sale of wheat in New York, to be delivered three months later, say, in Chicago.

It does not follow that, because the receipt of money by ticket agents and brokers for the agreed specific purpose of forwarding has been held to constitute an agency or trust, the widely different and well-established business of selling foreign exchange or credit is founded upon the relation of agency or trust. The latter business is frequently carried on by issuing drafts and orders or letters of credit. The distinction between issuing a draft or traveler's check and receiving money for transmission is recognized in *Musco* v. *United Surety Co.* (132 App. Div. 300, 305); also in the statute (Laws of 1907, chap. 185, as amd. by Laws of 1908, chap. 479; revised by General Business Law [Consol. Laws, chap. 20; Laws of 1909, chap. 25], § 25 *et seq.* added by Laws of 1910, chap. 348, as amd. by Laws of 1911, chap. 393),* which

---

* Now Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), art. 4.— [REP.

requires persons who engage in the business of receiving money for the purpose of transmitting it to foreign countries to execute a bond to secure the faithful transmission of the money.

The transaction at bar is very analogous to the purchase of a draft on the bankers' foreign correspondent. In the latter case the draft would evidence the bankers' obligation to establish the credit in Italy, whereas in the case of the cable transfer the memorandum delivered by the bankers evidences the obligation. In the case of a draft, where time is not so important, the purchaser would ordinarily mail the draft. In the case of a cable transfer, where time is all important, the seller, who necessarily is supposed to have an existing credit in the foreign country wholly independent of any money being forwarded, issues his orders to transfer the credit, employing a cablegram instead of a draft. Can there be any doubt but that when a traveler, wishing to establish credit in foreign countries, pays his money over to the banker, who agrees to honor his drafts abroad and evidences the agreement by a letter of credit, the transaction is then complete and title to the traveler's money vested in the banker? Could the banker be held as a *defaulting trustee* if he went into bankruptcy before the letter of credit was actually drawn upon? Clearly not. Mr. Justice LAUGHLIN concedes that in the purchase of a draft the seller gets immediate title to the money paid for it, but says in such case, " the purchaser receives the draft, which is what he desires, and he uses that himself." I doubt that what he desires is the draft which he receives. He desires the transfer of credit which the draft, if accepted, assures. If the draft should not be accepted, he would be in precisely the situation of this plaintiff, not able to hold as a defaulting trustee the issues of the draft, but with a good cause of action against him for breach of contract.

The judgment should be affirmed, with costs.

Judgment reversed, with costs, and judgment directed for plaintiff for the relief demanded, with costs. Order to be settled on notice.