## MUSCO v. UNITED SURETY CO.

(Supreme Court, Appellate Division, First Department. May 14, 1909.)

1. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER.

A citizen may, as a general rule, carry on any lawful business in any lawful way without legislative interference; but the Legislature under the police power may enact laws tending toward the public welfare, or toward the prevention or suppression of fraud.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

2. CARRIERS (§ 11*)—TRANSMISSION OF MONEY—REGULATIONS—POLICE POWER.

Laws 1907, p. 263, c. 185, requiring all persons, who add to their business of selling steamship or railroad tickets to or from foreign countries the business of receiving money for transmission to foreign countries, to give a bond, merely regulates the carrying on of the business of transmitting money to foreign countries and restricts the business by requiring a bond to prevent fraud and the commission of crime, and is valid as within the police power.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 2, 3; Dec. Dig. § 11.*]

3. CONSTITUTIONAL LAW (§ 211*)—CLASS LEGISLATION.

A law is not unconstitutional, as in violation of the equal rights clause of the Constitution, because the Legislature does not include all that could have been included, and, while a state Legislature cannot make an arbitrary classification, yet where a classification is reasonable, and the law deals alike with all persons of a certain class, the statute does not deny the equal protection of the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 678; Dec. Dig. § 211.*]

4. CONSTITUTIONAL LAW (§ 240*)—EQUAL PROTECTION OF LAWS.

Laws 1907, p. 263, c. 185, requiring all persons, who add to their business of selling steamship or railroad tickets to or from foreign countries the business of transmitting money to foreign countries, to execute a bond, is not invalid as denying the equal protection of the law, because it excludes from its operation steamship companies or their agents and banks and trust companies, since the Legislature might well determine that steamship companies and their authorized agents and banks and trust companies needed no further regulation, and thereby make a classification.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 688; Dec. Dig. § 240.*]

5. CONSTITUTIONAL LAW (§ 240*)—EQUAL PROTECTION OF LAWS.

The declaration in the act that it shall not apply to drafts, money orders, and traveler's checks issued by trans-Atlantic steamship companies or their agents, and banks and trust companies, does not render the act invalid as denying the equal protection of the laws; there being a distinction between issuing a draft or travelers' check and receiving money for transmission.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 688; Dec. Dig. § 240.*]

Appeal from Special Term, New York County.

Action by Damiano Musco against the United Surety Company. From an order of the Special Term (115 N. Y. Supp. 199) overruling a demurrer to the answer and dismissing the complaint, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and LAUGHLIN, McLAUGHLIN, HOUGHTON, and SCOTT, JJ.

Nelson L. Keach, for appellant.
Edwin Blumenstiel, for respondent.

HOUGHTON, J. On the 27th day of June, 1907, one Ferrara was engaged in the selling of steamship tickets for transportation to foreign countries and, in conjunction therewith, desired to carry on the business of receiving deposits of money for the purpose of transmitting the same to foreign countries. Plaintiff's complaint alleges: That on that day he, as principal, and the defendant, as surety, in conformity with the requirements of chapter 185, p. 263, of the Laws of 1907, executed and delivered to the people of the state a bond in the sum of $15,000, conditioned that Ferrara should faithfully and diligently hold and transmit any and all moneys, or the equivalent thereof, which should be delivered to him for transmission to any foreign country, and duly account for and promptly pay over all moneys so received by him, or, in default, that defendant would pay the same to the extent of said bond; that plaintiff's assignors, at various times after the giving of said bond, intrusted and delivered to Ferrara various sums of money to be transmitted and by him paid over to various persons in the Kingdom of Italy, which sums he failed to transmit and account for and pay to such persons; and plaintiff demands judgment for such amounts against the surety, in pursuance of the right of action given by the statute to the injured party. A copy of the bond is attached to the complaint, and the defendant by its answer admits the giving of it, but sets up as a separate affirmative defense that the law,

under the provisions of which the bond was required and given, is unconstitutional, in that it operates as an unjustifiable interference with the rights of citizens to carry on a legitimate business, and also that by reason of the excluding of steamship companies or their authorized agents, and banks and trust companies, from its provisions, it operates as an unjust discrimination between persons of the same class, and that hence the bond given in compliance with such unconstitutional law is void and inoperative. The plaintiff demurred to such defense, and the learned Special Term, although holding that the form of the defense was bad, deemed the law unconstitutional and overruled the demurrer on the ground that the complaint stated no cause of action, and directed final judgment thereon against the plaintiff, who now appeals.

We are of opinion that chapter 185 of the Laws of 1907 is not unconstitutional, either as an unjustifiable interference with the rights of citizens or as class legislation, and that the complaint states a good cause of action, and that the answer pleads no defense.

The act provides that all persons engaged in the selling of steamship or railroad tickets for transportation to or from foreign countries who, in conjunction with such business, shall carry on the business of receiving deposits of money for the purpose of transmitting the same or its equivalent to foreign countries, shall, before entering into such business, make, execute, and deliver a bond to the people of the state of New York in the sum of $15,000, conditioned for the faithful holding and transmission of any money or the equivalent thereof which shall be delivered to him for transmission to a foreign country, which bond shall be approved by the Comptroller of the state and filed in his office, and that, upon breach, a cause of action thereon shall accrue in favor of any aggrieved party. The law also provides that any person carrying on such business of transmitting money to foreign countries without the giving of such bond shall be guilty of a misdemeanor, but that its provisions shall not apply to drafts, money orders, and traveler's checks issued by trans-Atlantic steamship companies, or their duly authorized agents, or by national or state banks or trust companies.

It will be observed that the law does not prohibit any person from engaging in the business of selling steamship or railroad tickets to or from foreign countries, and that no bond is required of one who is engaged in that business alone. When, however, a person desires to add to such business that of receiving money for transmission to foreign countries, or a virtual banking business, the law requires that he shall give a bond for the faithful discharge of his obligations in connection therewith. The law does not operate as a prohibition against any person engaging in the business of transmitting money to foreign countries. It merely regulates the carrying on of that business by guarding, in the form of a bond, against imposition, fraud, and embezzlement. Such a regulation seems to us a very wholesome one and one clearly within the power of the Legislature to establish. As a general proposition, of course, a citizen has the right to carry on any lawful business in any lawful way, without legislative interference; but under the police power the Legislature has the right to enact laws

tending toward the public welfare or toward the prevention or suppression of fraud. The Legislature could well take notice of the frequent embezzlements and misappropriations by trans-Atlantic ticket agents of funds intrusted to them for transmission by their fellow countrymen, and that ignorant emigrants were more likely to intrust money for transmission to their home countries to the men who had had charge of the transporting of themselves or their friends than through regular banking institutions. For the purpose of preventing imposition and fraud and crime, and promotion of the public welfare, it had the right to enact a law regulating the carrying on of such business and imposing as a condition the giving of a bond in any reasonable amount.

. In principle we see no difference between the present case and that of People ex rel. Armstrong v. Warden, 183 N. Y. 223, 76 N. E. 11, 2 L. R. A. (N. S.) 859, where a law requiring one conducting an employment agency in cities of the first and second class to take out a license and pay $25 annually therefor, under pain of being guilty of a misdemeanor, was held constitutional and a proper legislative regulation of a business in which fraud and imposition were likely to occur. The conducting of an employment agency is a perfectly legitimate and lawful business in which any one might engage; but, nevertheless, it was deemed to be one so open to fraud that legislative restriction requiring the obtaining of a license was legitimate and proper. So, too, the engaging in the business of transmitting money to foreign countries by one who sells tickets for transportation to foreign countries is a legitimate and lawful business, but is one so open to fraud and the commission of crime that legislative restriction requiring the giving of a bond comes within the lawful powers of the Legislature.

Nor in our opinion is the law unconstitutional because trans-Atlantic steamship companies and their agents and national and state banks and trust companies are exempted from giving the bond when issuing drafts, money orders, and travelers' checks. National banks are regulated by federal laws, and state banks and trust companies by laws of the state; all tending to insure honest dealing with customers and safety in money transactions. A trans-Atlantic steamship company necessarily has large capital invested and large assets and, for certain kinds of contracts, is, under the maritime law, under stringent liability. The Legislature had the right to say that national and state banks and trust companies and trans-Atlantic steamship companies needed no further regulation for the purpose of guarding against fraud and embezzlement. It might have been wisdom on the part of the Legislature to have included the exempt corporations, instead of excluding them, and to have compelled all to give a bond; but the fact that they were excluded does not impair the law. A law is not rendered unconstitutional as in violation of the equal rights clause because the Legislature did not include all that it might have included, or condemn all acts that it might have condemned. It has the right of judging what it deems harmful or what it deems should be safeguarded, and need not include all harmful acts, or guard against everything that apparently needs guarding. All that the federal Constitution requires it shall

do is that it shall not deny to any person the equal protection of the law. While a state Legislature cannot make an arbitrary classification, yet if a classification be reasonable, and the law deals alike with all persons of a certain class, it is not obnoxious and is not a denial of equal protection of the law.   Hathorn v. Natural Carbonic Gas Co., 194 N. Y. 326, 346, 87 N. E. 504.   In view of the safeguards already existing by law affecting the exempted corporations, tending to insure honest dealing, it was not unreasonable to exempt them and create a general class made up of all persons, corporations, and firms engaged in the business of selling steamship or railroad tickets for transportation to or from foreign countries, and to require them, if they desired to add to their business that of receiving deposits of money for the purpose of transmitting the same to foreign countries, to give the bond prescribed for the purpose of guarding against fraud, imposition, and embezzlement.   All of the class created are affected alike, and, the classification being reasonable, the law is not unconstitutional.

The respondent insists that the case of People ex rel. Tyroler v. Warden of Prison, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763, is controlling upon us and conclusive as to the unconstitutionality of the law.   We think otherwise.   In that case, chapter 506, p. 637, of the Laws of 1897, which prohibited the selling of tickets for passage on vessels or railroad trains by any person except common carriers and their specially authorized agents, was held to transcend the police power and to be unconstitutional.   The law there under consideration prohibited entirely the business of selling tickets. The law of 1907 does not prohibit the carrying on of the business of receiving deposits of money for the purpose of transmitting the same to a foreign country, but merely regulates it.   The difference between actual prohibition and reasonable regulation which does not prohibit is very broad.

We have assumed that steamship companies and their agents and national and state banks and trust companies are actually excepted by the law under consideration.   If it is necessary, however, to point out any distinction, it will be observed that drafts, money orders, and travelers' checks only are excepted, and not the general business of receiving deposits of money for the purpose of transmitting the same or its equivalent to foreign countries, which is specified in the body of the law.   The buying of a draft or money order is not, strictly speaking, the same as receiving money for transmission.   The actual money can be shipped to its destination, or, upon his own responsibility, the person receiving the deposit can buy a bill of exchange or draft, as he sees fit.   Technically speaking, there is a marked distinction between issuing a draft or traveler's check and receiving money for transmission; but, interpreting the law as applying to the same thing in both instances, we do not think the exemption is fatal.

The respondent also relies upon Valentine v. Berrien, 124 Mich. 664, 83 N. W. 594, 50 L. R. A. 493, 83 Am. St. Rep. 352, decided by the Supreme Court of Michigan.   Even though that case be directly in point, it can only be said that, however great our respect for any

decision· of that court may be, we do not feel justified in following it in the present instance.

The complaint alleges·that the bond was given in pursuance of the statute, and nothing is disclosed in the pleadings as to whether or not the defendant voluntarily executed the bond in behalf of its principal, or whether it did so for a consideration. If Ferrara desired to comply with the law, whether it was constitutional or unconstitutional, and for that purpose applied to the defendant to execute the bond and paid it a consideration therefor, there might be a very grave question as to whether the defendant was in a position to take advantage of its unconstitutionality if it were unconstitutional. In view of the facts not appearing, however, in the pleading, that question is not before us.

The law in our opinion being constitutional, it follows that the judgment of the Special Term overruling the plaintiff's demurrer to the defendant's separate answer should be reversed, with costs, and the demurrer sustained, with costs, with leave to the defendant to serve an amended answer within 20 days upon payment of costs of this court and of the court below. All concur.

---

## BENVEGA v. UNITED SURETY CO.

(Supreme Court, Appellate Division, First Department. May 14, 1909.)

Appeal from Special Term, New York County.

PER CURIAM. Judgment reversed, with costs, and demurrer sustained, with costs, with leave to defendant to amend on payment of costs, on the opinion in Musco v. United Surety Co. (decided herewith) 117 N. Y. S. 21. Order filed.