## JACOB KATCHER, RESPONDENT, v. AMERICAN EXPRESS COMPANY, APPELLANT.

Argued March 6, 1919—Reargued November 18, 19, 1919—Decided March 9, 1920.

Defendant agreed, in consideration of money paid by plaintiff, to cable a credit of 1,000 rubles to Russia and remit, or forward, that sum to a designated person at a specified place, "subject to the rules and regulations of the various post-offices used in making the remittance." *Held,* that there was no absolute agreement to deliver the money, and that when it had been duly mailed in Russia and had come back to defendant's agent undelivered, plaintiff was entitled to no more than the 1,000 rubles, or their American equivalent at the current rate of exchange as of a time when with due diligence defendant should have ascertained and reported non-delivery.

On appeal from the Supreme Court, whose opinion is re
ported in 92 *N. J. L.* 309.

For the appellant, *Josiah Stryker* (*Lindabury, Depue &
Faulks* on the brief).

For the respondent, *Philip J. Schotland.*

The opinion of the court was delivered by

PARKER, J. The facts are stated with some detail in the
opinion of the Supreme Court, but in view of the difference
in the theory of the case as entertained by that court, and by
the District Court, in which the case was tried, some further
account of the case seems essential to a proper understand-
ing of the grounds of our present decision.

The state of demand counted on a claim that, in Septem-
ber, 1917, plaintiff had delivered to the express company
$194.50 which the company "undertook to deliver" to Tese
Kaczier at a stated place in Russia; that defendant had failed
to deliver the money as agreed, and had refused to return
it to plaintiff. This, of course, does not necessarily stand
on any written contract, and in fact at the trial the plaintiff
ignored the receipt issued by the agent as being or contain-
ing a contract, offering it merely as a receipt and relying on
oral conversation respecting the terms of the contract be-
tween the parties. This seems to have been on the theory
that the writing contained a clause that it should be invalid
for any sum over $50. The trial court took this view in de-
ciding the case. The plaintiff urged it in the Supreme Court
and urges it here. The Supreme Court refused to adopt this
view, holding that defendant ratified it as a receipt for
$194.50. 92 *N. J. L.* 309. In this we concur, and go a step
farther, for it expressed not only the fact of the receipt of
the money, but also the terms on which it was received and
what was to be done in consideration thereof. It is not pre-
tended that plaintiff was in any way deceived as to its con-
tents, and we think all the evidence is in accord that what

he wanted was to send to Tese Kaczier, his wife, in Russia. not $194.50, but a thousand rubles; and that the receipt itself was contractual in form and exclusive of other evidence as to terms of the contract that it contained. It was therefore error for the trial judge to disregard the receipt; and this led to two fundamental errors in the decision; the first, respecting the kind of money that was to be sent on; the second, the duty of defendant as to its transmission.

This brings us to the language of the receipt, which follows in full:

"Receipt for Foreign Money Order.        No. 626442.

"CABEL State of .................. Sept. 8, 1917.

"Received from Mr. Jack Katshur

"Address 172 Prince St.

"one hundred ninety four ............ Dollars
"not exceeding Fifty Dollars
"Equivalent of
"One thousand ............. 1000 Rubel
"not exceeding 250 Kronen, 250 lire finmarks, 240 marks 185 kroner or 100 Roubles.

"For remittance to Tese Kacjur

"At Bereznier, Luckiy, Wolynck

"AMERICAN EXPRESS COMPANY,

"$194.50        EMIL GERMANUS,

"(5264. Aug. 1915)        Branch Agent.

"This receipt is issued subject to the following express conditions:

"It is understood and agreed by and between the person who accepts this receipt and the American Express Company that the acceptance of this receipt by such person shall bind him to the following provisions: 1. This receipt is not negotiable. 2. This receipt must not be issued or accepted for more than the sum of $50, or its equivalent, and is not valid for more than said sum, or its equivalent. 3. The sum of money, if covered by this receipt, is duly issued as aforesaid, will be forwarded to the payee named herein, subject to the rules and regulations of the various post-offices

used in making the remittance. 4. Any alteration or mutilation of this receipt, or any attempt to alter or amend the printed provisions of this receipt renders it void."

Written across the face of the receipt are the words:

"NOT NEGOTIABLE, NOT EXCEEDING $50.00."

Examining this paper in the light of what has been said, it is plain that it provides for a "foreign money order" by cable (cabel) for the sum of 1,000 rubles, for *remittance* to Tese Kacjur, at, &c., and that this sum will be *forwarded* to the payee named, subject to the rules and regulations of the various post-offices used in making the *remittance*. The italics are ours, and are intended to emphasize, among other things, the fact that the word "deliver" is nowhere employed.

The first conclusion we reach is that plaintiff misconceived his rights in claiming that the company agreed to deliver or send the sum of $194.50. What it agreed was to remit or forward, not American, but Russian money, and this accords not only with all the reason of the case, but with the testimony of defendant's agent, called by plaintiff's counsel as a witness, that plaintiff said he wanted to send a thousand rubles to Russia. Plaintiff was sworn but not examined on any point except the offer to return $125 in settlement.

So that if this oral evidence were competent, it merely confirms the language of the writing. The result seems to be that the state of demand instead of counting on the right to a restoration of money had and received to the use of plaintiff (and this is its effect), should have claimed damages for failure to deliver 1,000 rubles to the party and at the place specified. A motion to nonsuit was made on this ground, and as plaintiff made no suggestion of amending, it should have prevailed.

But in view of the importance of the case as typical of a great number of similar transactions, we are not disposed to rest our decision on a mere question of pleading. The fundamental issue is as to the duty of the defendant under its contract. Plaintiff claims that defendant agreed to deliver

the money, dollars or rubles, to Tese Kaczier at the place named. We are unable to read any such agreement from the written contract even as supplemented by parol evidence. It uses the word "remittance" twice, and the word "forward" (as a verb) once. Without doubt, the two words are used synonymously. As we have said, the word "deliver" is not used at all. The definitions of the word "remit" in standard authorities do not involve the idea of delivery. "Remit (2). To transmit or send, as money, bills, or other things in payment for goods received," (quoting from Goldsmith). "I have received the money which was remitted here in order to release me from captivity" (Century Dictionary). "To transmit or send, especially to a distance, as money in payment of a demand, account, draft, etc." (New International Dictionary.) See also 24 *Encycl. L.* (*2d ed.*) 461, and *Comber* v. *Leyland,* 1898 *A. C.* 524. So the word "forward" is defined in both these authorities as "to send forward; to send toward the place of destination; to transmit." See *Buell* v. *Chapin,* 99 *Mass.* 594.

The proper interpretation of the contract before us, is this: that the express company was to convert the plaintiff's money, after deducting its own charges, by cable into rubles in Russia; that plaintiff had paid in sufficient to obtain these 1,000 rubles after paying charges; that this sum of 1,000 rubles was to be forwarded, or remitted, which amounts to the same thing, to Tese Kaczier at the given address by the usual course of the Russian mail. This was the extent of appellant's primary duty under the contract. If the rubles were undelivered and were returned by the post-office and reaccepted by defendant, it is obvious that certain secondary duties might arise, either to return the rubles to plaintiff, or hold them subject to his order, or possibly under certain circumstances to make a fresh effort to forward them. It did appear that defendant allowed several months to elapse before notice to plaintiff of non-delivery. This it undertook to explain and asked a commission to take testimony in Russia on that point. The commission was refused on the broad

ground that the company had made an absolute agreement to deliver the money, and that ruling was sustained by the Supreme Court even under the written contract. This was erroneous, in view of our holding that delivery was not insured.

The trial court was also asked by defendant to rule as follows:

"3. If the defendant's Russian correspondent, upon the receipt in due course of the cable message advising him to make the remittance to Tese Kaczur, purchased a money order for said one thousand rubles at the Russian post-office, enclosed the same in an envelope with postage prepaid, addressed to Tese Kaczur at the address given, this constituted a remittance of the money in the manner contemplated by the contract, whether or not Tese Kaczur ever received the money order.

"4. If, after the Russian postal money order had been sent by the defendant's Russian correspondent to Tese Kaczur at the address given, it was returned by the post-office authorities to the defendant's Russian correspondent as undeliverable, it became the duty of the defendant to hold to the plaintiff's account and subject to his order, the credit purchased by him for one thousand rubles, or at the plaintiff's request to return to the plaintiff the equivalent of the said credit in American money.

"5. The purchase of a credit available in Russia for one thousand rubles was complete when made, and if, because of a depreciation of rubles pending the time which elapsed between the time of purchase and the return of the same to the defendant's correspondent as undeliverable, said credit became of less value when measured in terms of American money than the sum paid therefor by plaintiff, the loss occasioned by such depreciation upon the reconversion of such credit into American money must be borne by the plaintiff."

Numbers 3 and 4 are correct. Number 5 is proper, with the reservation that defendant must be reasonably prompt in notifying plaintiff of non-delivery, so that plaintiff might avoid loss on a falling market.

It is plain that under the circumstances of the case plaintiff is entitled to recover in some action the value of 1,000 rubles remaining undelivered in defendant's hands as of the time when; in the usual course and with reasonable diligence, defendant should have ascertained and notified plaintiff that delivery had failed and was impracticable by the course of the mail. When that time arrived is not shown in the case. It may have been March 4th, 1918, when the auditor wrote the agent at Newark, or it may have been earlier. Defendant's proffer of proof and application for a commission bore on this point, and in any such action it is material as to the amount of American money that plaintiff should receive back if paid in that medium. The judgment before us must be reversed and the cause sent back for a new trial. Plaintiff should be permitted to amend his demand to conform to the correct theory of the case. As we have said, it is not sufficient in its present form to sustain an action based on the facts as now before us.

*For affirmance*—THE CHANCELLOR, MINTURN, J.  2.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, ACKERSON, JJ.  9.