DAVID H. BEECHER *vs.* COSMOPOLITAN TRUST COMPANY & another.

Suffolk.    March 25, 1921. — May 28, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Bank. Trust. Equity Jurisdiction,* To enforce "remittance order." *Commissioner of Banks.*

On a September 21 a trust company, upon receipt from a customer of $500 with thirty cents for postage, undertook and agreed to deliver to a specified person in Roumania a specified number of Roumanian lei and delivered a "remittance order" to the customer which had printed on its face stipulations that it was "expressly agreed that . . . [the company] acts as agent only for the sender," that the bank, "its Correspondent or Agent is to forward the money from any European Post Office to the required address," that the liability of the bank "to the sender is to be no greater than the liability of the European Post Office to us, and all claims in case of loss of money to be adjusted only when the amount is received from the European Post Office or Correspondent," that "refunds will be made at rate of Exchange prevailing on date of refund," and that "this receipt must be produced when making inquiries regarding this order." At that time the trust company had an ample net balance with a bank in Roumania. It was the practice of the company to send by every convenient sailing advices of remittances then awaiting execution. It mailed a letter of advice as to the remittance order above described on September 24. On September 25 the commissioner of banks under St. 1910, c. 399, took possession of the trust company and by cable stopped payment by the bank in Roumania. *Held,* that

(1) The bank did not receive the money as a trust;

(2) The agreement of the trust company was merely that it would procure and provide funds in Roumania to meet the order which it had sold and delivered to the plaintiff, when that order should be presented for payment;

(3) The agreement between the parties did not contemplate that the money itself should be remitted or that the trust company should not use the money paid to it as its own pending the performance of its agreement with the plaintiff;

(4) Upon failure of the bank to perform, the customer became a creditor of the bank to the amount of the exchange value of the specified number of Roumanian lei on that date: a contract liability not cognizable in equity.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 15, 1921, against the Cosmopolitan Trust Company and the commissioner of banks seeking a decree directing the repayment to the plaintiff of $500.30 paid by the plaintiff to the bank on September 21, 1920.

An answer, but no replication, was filed. Material facts alleged in the pleadings are described in the opinion.

The bill came on to be heard before *Crosby*, J., upon the bill and answer, and was reserved for determination by the full court.

*H. W. Brown*, for the defendants.

*M. Katzeff*, for the plaintiff, submitted a brief.

PIERCE, J. This is a bill in equity reserved by a single justice upon the bill and answer for the determination of the full court. The facts as stated in the bill and answer are that on September 21, 1920, the plaintiff paid the defendant trust company $500, and thirty cents postage, for a remittance order for twenty-four thousand and two hundred and seventy Roumania lei. He received a receipt which read as follows:

" Cosmopolitan Trust Co.
      Foreign Department              Sold to
      60 Devonshire Street               Beecher El. Co.
        Boston, Mass.                Address 214 Moody St.
                                         Waltham, Mass.

No. 16322 Remittance Order       @                = $500.00

      September 21, 1920    192    Postage fee —          .30

Amount R. L. 270 twenty four thou-  Total paid —      $500.30
    sand two hundred and seventy
      Roum, Lei.                          Conditions
Payable to Mordchi Berman
Address Lipcani, Bessarabia, Roumania.

1. It is expressly agreed that The Cosmopolitan Trust Co. acts as Agent only for the sender.

2. The Cosmopolitan Trust Co., its Correspondent or Agent is to forward the money from any European Post Office to the required address.

Through Bucharest.

3. The liability of the Cosmopolitan Trust Co. to the sender is to be no greater than the

liability of the European Post Office to us, and all claims in case of loss of money to be adjusted only when the amount is received from the European Post Office or Correspondent.

4. Refunds will be made at rate of Exchange prevailing on date of refund.

5. This receipt must be produced when making inquiries regarding this order.

C.W.C.    17076–10M

[Across face:]

Paid.

Cosmopolitan Trust Co.

Sept. 21, 1920.''

He also received a remittance order which is in the terms of the receipt without the conditions.

On September 21, 1920, the defendant trust company had a net credit balance with the Banque Marmorosch Blank and Cie., Bucarest, in the amount of 303,424.25 Roumanian lei, and an entry was made on the books of the trust company crediting the Banque Marmorosch Blank and Cie. and setting aside twenty-four thousand two hundred and seventy Roumanian lei covering this remittance.

It was the practice of the defendant trust company to send by every convenient sailing the advices of remittances then awaiting execution. In accordance with this custom, on September 24, 1920, it sent to the Banque Marmorosch Blank and Cie. by mail a letter of advice, which reads:

" Cosmopolitan Trust Company
60 Devonshire Street
Boston, Mass.

List No. 9                              Date September 24th, 1921.

Marmorosch, Blank & Cie.,
    Bucarest, Roumania.

Dear Sirs: — Please execute the following money orders to debit of our account:

| Number | Amount | Payee's Name and Address |
|--------|--------|--------------------------|
| 16270 | 2000 | |
| 16291 | 1000 | |
| 16322 | 24270 | |
| 16324 | 2326 | |
| | 29596 | |

(Twenty nine thousand five hundred ninety six Roumanian Lei). "

The third item, No. 16,322 on this exhibit, is for the plaintiff's remittance. Accompanying this advice were copies of various remittance orders, included among which was the remittance order of the plaintiff. Upon receipt of the $500 it was immediately placed with the general funds of the bank. On September 25, 1920, the commissioner of banks by virtue of the provisions of St. 1910, c. 399, duly took and now retains possession of the property and business of the Cosmopolitan Trust Company, and acting under the authority of the statute by cable stopped all payments by all foreign correspondents of the Cosmopolitan Trust Company, including the said Banque Marmorosch Blank and Cie. On that date the net credit balance of the Cosmopolitan Trust Company at said Banque Marmorosch Blank and Cie was 172,392 Roumania lei, which is the amount left after debiting the amount of the plaintiff's remittance and all other outstanding drafts or orders upon this account; and on that date 24,270 lei were worth $485.40. The plaintiff has demanded of the defendants, the Cosmopolitan Trust Company and the commissioner of banks, that they refund to him the sum of $500.30, but they refused and still refuse to refund and return the said sum to the plaintiff.

Upon the foregoing facts the plaintiff contends that a trust attached to the $500.30 when that amount was delivered to the defendant trust company; that the company and the commissioner of banks thereafter held that money as trustees, and not as debtors, until the object for which the money was left with the defendant trust company was accomplished or it was returned to the plaintiff. As no contention is made that the trust arose through the fraud or bad faith of the company or .its officers in receiving the money of the plaintiff with knowledge of its insolvency, the argument that there was a trust created by the delivery

of the money to the defendant trust company for remittance must stand or fall upon the fact, or the absence of fact, that the money was received by the defendant trust company as a special deposit for transmission to its correspondent bank in Roumania. *Freeman's National Bank* v. *National Tube Works Co.* 151 Mass. 413, 418. *Furber* v. *Dane,* 204 Mass. 412, 416, 418. Upon consideration of the receipt and remittance order, in the light of all the admitted facts, we are of opinion that the obligation of the defendant trust company to the plaintiff created by the delivery of the money was not to hold that money separate and apart from its general funds until the remittance order should be presented and honored, but was a contract obligation based upon the payment of the money to have funds in Bucarest with a bank, which funds should be sufficient to insure the payment of the order on presentation. In a word, what the plaintiff accomplished by the payment of the money was the receipt of an agreement by the defendant trust company that it would procure and provide funds in Roumania to meet the order which it had sold and delivered to the plaintiff, when that order should be presented for payment. It was not contemplated by the plaintiff that the money itself should be remitted or that the trust company should not use the money paid to it as its own pending the performance of its agreement with the plaintiff. Its failure to perform gave rise to an action in contract, and not to a suit cognizable in a court of equity. *Taussig* v. *Carnegie Trust Co.* 213 N. Y. 627. *Legniti* v. *Mechanics & Metals National Bank of New York,* 230 N. Y. 415.

It follows that the defendant trust company as a debtor became obligated to repay to the plaintiff by way of damages the exchange money value of the order, when the defendant trust company refused through the action of the commissioner of banks to perform its contract. That value on September 25, 1920, was $485.40, G. L. c. 107, § 10, and that sum is to stand as a provable claim against the defendant Cosmopolitan Trust Company.

*Ordered accordingly.*