In the Matter of the Application of ALTER GLICKSBERG, Appellant, to Compel Payment by the SUPERINTENDENT OF BANKS, Respondent.*

First Department, February 11, 1932.

*Aaron J. Funk,* for the appellant.

*Julius L. Neidle* of counsel [*Arthur Ofner, Warren C. Fielding* and *Walter Bishop* with him on the brief; *Carl J. Austrian,* attorney], for the respondent.

SHERMAN, J. The petitioner on December 1, 1930, paid to the Bank of United States the sum of $500 with directions to transmit

---

* Revd., 259 N. Y. ——.

it to an individual at Warsaw, Poland, which the bank promised and agreed to do and gave him a receipt therefor. Stamped " paid " by the bank, it states the payment by petitioner of the sum of $500, plus a charge of $2.50, making a total of $502.50 " for the transmission of U. S. Dollars $500 " to one Majufes, at Warsaw, subject to printed conditions on its reverse side at the foot of which petitioner placed his signature. This paper (in form a mere receipt) is therein referred to as a " money order," and petitioner as the " purchaser," who requests the bank " to forward to his account and risk the amount stated on the reverse side hereof, or its equivalent in foreign currency at the option of the Bank of United States in accordance with " its terms and conditions. The Bank of United States was to be " liable only as agent for the purchaser," and it had the right to forward the order for execution to a foreign correspondent and instruct him " to charge the bank's credit balance with the amount of the order, to execute the same," and the bank, as well as its correspondents, had the option of executing it in any foreign exchange or currency regularly used in the place of payment. The bank, its correspondents or representatives assumed " no liability for inability to forward or deliver such money except for gross negligence." It provided for fixing the amount payable " in the event that this order should be converted by the Bank of United States or its correspondents." It likewise exempted the Bank of United States from liability for delay or " non-delivery " by its correspondents to the payee.

Nothing has been paid to Majufes by the Bank of United States or any of its correspondents. The property and business of the Bank of United States, since December 11, 1930, has been administered by the Superintendent of Banks because of its insolvency. The affidavit of the Deputy Bank Superintendent asserts upon information and belief that the bank had a balance with a certain bank at Warsaw, to which it was accustomed to forward by letter a list containing the names of individuals in whose favor it might desire that credit be established at that bank, and that on the day following such mailing the Bank of United States would credit the Warsaw Bank with the dollar equivalent, and that upon the receipt of the list from the Bank of United States, the Warsaw bank would notify the nominees therein named of the existence of the credit in their favor.

Examining the documents we find that on December 3, 1930, the Bank of United States mailed a letter to the bank in Warsaw, but it mentioned nothing about establishing a credit, its language being, " Kindly make the following payments for our account, under advice to us."

The name and address of Majufes and the amount $500 are among those there set forth, to whom payment was to be made.

The Superintendent of Banks, on December eleventh, cabled to the Warsaw bank not to pay on any unexecuted directions from the Bank of United States. The Warsaw bank had not at that time received the communication from the Bank of United States relating to payment to petitioner's nominee. It accordingly has made no payment. The Superintendent of Banks holds petitioner's money, denies that it should be treated as a special deposit, and claims that it has entered into the general funds of the bank, and that petitioner has become a general creditor and not entitled to a preferential payment.

The determination to be reached in this matter depends upon the relationship of the parties, the language of the writing which expresses the undertaking of the bank, and the intent to be derived therefrom. Petitioner did not purchase anything from the bank. He did not obtain any draft or foreign credit or instrument of any kind issued by the bank which by its terms was calculated to make him or his nominee the owner of any credit. The engagement of the Bank of United States was to transmit $500 to petitioner's nominee, as his agent, with the right on its part to perform that agency by means of such machinery currently used to effectuate the transfer of moneys to individuals in another country as it might select. It made a charge for that service. Under those circumstances, no mere debtor and creditor relationship arose, but one fiduciary in character such as obtains between a principal and his agent. If the Bank of United States had proposed to sell to petitioner a credit or a draft it could have used clear language to that end and have delivered to him not a mere receipt but an instrument couched in apposite terms. It chose, on the contrary, to become his agent. Under such circumstances, neither the bank nor the Superintendent of Banks obtained the right to the use of petitioner's moneys to defray the bank's obligations. It was the bank's duty to treat it as a special deposit.

In *Matter of Littman* v. *Broderick* (232 App. Div. 538) the petitioner delivered moneys to the Bank of United States " to be transmitted by cable or radio " to an individual at Havana, Cuba. This transaction was to be a mere cable transfer and through the Royal Bank of Canada a credit in favor of petitioner's nominee was established at Havana, but he declined to accept it. Advised that the moneys had not been paid over, the Superintendent of Banks, who had meanwhile taken possession of the Bank of United States, debited the Royal Bank of Canada with the amount with which it had previously been credited. This was in effect crediting it to,

and appropriating it for, the Bank of United States. This court (MARTIN, J.) said (p. 539): " We are of the opinion that the original transaction between the Bank of United States and the petitioner herein resulted in a special deposit and did not create the relationship of debtor and creditor. The cable advice stated that the money was the property of the petitioner, and upon receipt thereof the respondent should have held it for the benefit of the appellant. The respondent was without authority to credit the Royal Bank of Canada with the funds received as they were the property of the petitioner, and not the property of that bank."

In *Cutler* v. *American Exchange National Bank* (113 N. Y. 593) moneys were delivered by plaintiffs to defendant for payment to one Hall in Leadville, Col., which payment was not made. The court held: " The deposit was a special one for a designated beneficiary and could not be used or dedicated by the defendant to any other purpose."

In *Legniti* v. *Mechanics & Metals National Bank* (230 N. Y. 415) the paper delivered to Legniti by A. Bolognesi & Co. on its face showed that it was a *purchase* of a cable transfer. Analyzing the effect of a purchase of credit, Judge CRANE, in reversing the judgment appealed from, concluded that any money paid by the customer to the banker upon such a purchase became the latter's property; that the transaction did not establish any trust relationship, the banker not even holding the money as agent or trustee until the foreign credit be established. The opinion continues (p. 420): " There is a marked distinction between these transactions which I have just described and a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner. Such were the cases of *Musco* v. *United Surety Company* (132 App. Div. 300) and *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276). In these latter transactions the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives that is to be transmitted. How it is sent may be immaterial to him. If there be time, currency might be purchased and sent. If not, it may be transmitted in any form recognized in financial circles. It is not at all necessary that the sender or agent have credit in the place to which the money is to be sent."

In that case Mr. Justice SHEARN had dissented from the judgment of the Appellate Division (*Legniti* v. *Mechanics & Metals National Bank*, 186 App. Div. 105) and based his conclusion upon the difference between the transaction of selling a draft or traveler's check

and that of receiving money for transmission. In referring to *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276) (where a conviction for grand larceny was sustained against a banker, who had appropriated money delivered to him for the purpose of forwarding its equivalent in Austrian money to a designated person at Vienna) he stated (p. 113): "In the *Zotti* case, the intention was that the money delivered to the broker should, to the extent of its equivalent in Austrian money, be forwarded to a designated person in Vienna. That was the specific use that the broker agreed to make of the money (as in *Cutler* v. *American Exchange Nat. Bank,* · 113 N. Y. 593), and when he appropriated it to his own use he was a defaulting trustee. The form of the receipt given showed that the money was received for the specific purpose of being forwarded. Here there was no such receipt or agreement. Instead there was delivered a memorandum showing that the plaintiff had ' bought of A. Bolognesi & Co.' a ' cable transfer to Italy ' in the sum of 18,000 lire."

Nor is the conclusion reached in *Beecher* v. *Cosmopolitan Trust Co.* (239 Mass. 48) at variance with these views, for the paper there issued by defendant referred to the transaction as a sale of a quantity of Rumanian lei payable to an individual in Rumania, and the court construed the transaction as an engagement by defendant to have funds in Bucharest on deposit with a bank " sufficient to insure the payment of the order on presentation."

In the case at bar it does not appear to have been contemplated that any document was to be delivered to the nominee in Warsaw for presentation at the bank at Warsaw to be cashed, but the Bank of United States engaged to seek out and deliver to him the moneys (or their equivalent) which petitioner handed to the bank for that purpose.·

The Superintendent of Banks in canceling the direction given to the bank at Warsaw acted for the Bank of United States, and the situation is no different from what it would have been if the bank itself had forbidden its agent to deliver the moneys which it had undertaken to transmit, and had kept the moneys. Its insolvency cannot change the essential nature of the transaction or alter petitioner's rights under the explicit agreement entered into by him with the bank.

The order appealed from should be reversed, with ten dollars costs and disbursements, and petitioner's motion granted, with ten dollars costs.

FINCH, P. J., MERRELL and McAVOY, JJ., concur; MARTIN, J., dissents.

MARTIN, J. (dissenting). I dissent and vote to affirm. The transaction under consideration was the purchase and sale of a

money order or credit. The agreement printed in this record provides " Terms and Conditions Agreed Upon Between Purchaser and Bank in Reference to Within Money Order." The terms are then stated in the agreement. The relation between the bank and the purchaser of the money order or credit was that of debtor and creditor. (*Safian* v. *Irving National Bank*, 202 App. Div. 459; affd., 236 N. Y. 513; *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.*, 172 App. Div. 16; *Legniti* v. *Mechanics & Metals National Bank*, 230 N. Y. 415; *Beecher* v. *Cosmopolitan Trust Co.*, 239 Mass. 48; *Musco* v. *United Surety Co.*, 132 App. Div. 300; affd., 196 N. Y. 459; *Taussig* v. *Carnegie Trust Co.*, 156 App. Div. 519; affd., 213 N. Y. 627; *Kuehne* v. *Union Trust Co.*, 133 Mich. 602.)

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.