[Civil No. 3319. Filed November 27, 1933.]

[26 Pac. (2d) 1027.]

SOUTHERN PACIFIC RAILROAD COMPANY OF MEXICO, a Corporation, Appellant, v. Y. C. WHITE, as Superintendent of Banks of the State of Arizona, and *Ex-Officio* Receiver of SONORA BANK & TRUST COMPANY, an Insolvent Banking Corporation, Appellee.

Mr. Francis M. Hartman, for Appellant.

Mr. James V. Robins, for Appellee.

LOCKWOOD, J.—This is an appeal by Southern Pacific Railroad Company of Mexico, hereinafter called the company, from a judgment of the superior court of Santa Cruz county denying the company's application for preference for a claim in the sum of 25,000 pesos Mexican money, against the assets of Sonora Bank & Trust Company, hereinafter called the bank, an insolvent banking corporation, but allowing the claim as an ordinary one.

There are some five assignments of error, three of which go to the findings of fact and the other two to the law of the case. It is necessary, therefore, that we first determine the facts and then the law applicable to such facts. It is, of course, the rule of the court that the findings of fact of the trial court, if supported by any reasonable evidence, are accepted as true. *Tombstone M. & M. Co.* v. *Way Up M. Co.,* 1 Ariz. 426, 25 Pac. 794; *Wright* v. *Young,* 20 Ariz. 46, 176 Pac. 583. It is also the rule that in case any findings of facts are necessary to support the judgment, but are not formally made by the trial court, if there is reasonable evidence in the record which would sustain such necessary findings it will be presumed the trial court so found. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226; *First Baptist Church* v. *Connor,* 30 Ariz. 234, 245 Pac. 932.

We think a statement of the facts so found, and those not found but necessary to support the judgment, is better made in a narrative form, for the sake

of clarity, rather than in a formal manner. The following is admittedly correct, or else if disputed finds reasonable support in the evidence:

For many years prior to November 19, 1931, the company was engaged in the railroad business in the Republic of Mexico, while the bank was engaged in the banking business at Nogales, Arizona. During this time the company transacted a large portion of its banking business with the bank and carried on deposit with it two separate accounts, one in United States and the other in Mexican money. In April, 1930, the Mexican government prohibited the importation into the Republic of Mexico of Mexican silver money of any coinage, and such law was in force from that date and during all the times herein mentioned. A large portion of the receipts of the company in the Republic of Mexico was in Mexican silver, but due to the law above referred to, if such silver were once exported from Mexico it could not be brought back into that country. From and after the adoption of this law, while the company carried at all times a deposit account with the bank in Mexican money, it deposited little, if any, actual Mexican silver in the bank; its credits of such money being obtained generally in the following manner: The company would collect Mexican silver in the state of Sonora and would deposit it in the Banco de Sonora, a Mexican banking corporation, which had branches in different places in the state of Sonora, to the credit of the bank. Upon legal notification of such deposits the bank would give appropriate credits on its books to the company's deposit. When the company desired actual silver to be used in Sonora to meet its pay-roll, much of which was paid in Mexican silver, it would notify the bank what it desired and the bank would telegraph to the main office of the Banco de Sonora at Hermosillo to de-

liver the quantity of Mexican silver desired to Wells Fargo & Company Express S. A., a Mexican corporation, which did business only in the Republic of Mexico, and the express company would then transmit the actual silver to the place and person requested by the company. The bank was expressly instructed by the company that it was not to make any charge against the company's deposit with it upon the receipt of these orders, but was to wait until the receipt given the express company for the silver so delivered to it from the Banco de Sonora had been received by the bank, when and not until when, it was authorized to charge out the amount from the company's deposit. Due to the difference in location of the bank and the main office of the Banco de Sonora, several days would necessarily elapse between the sending of the order by the bank to the Banco de Sonora to deliver the silver to the express company and the arrival at the bank of the receipt for the silver issued by the express company. This made it necessary for the bank to pay the Banco de Sonora for the silver from its own funds on deposit there some time before it charged out the amount so paid from the company's deposit with it, and in order to keep its records straight it opened a special so-called "float account" with the company, against which it charged the cost of the purchase of silver from the Banco de Sonora, as aforesaid, and which it credited with the same amount as soon as the receipt from the express company arrived, then and not till then, charging it against the peso deposit of the company. This was the general course of such business known and approved by both the bank and the company.

The special transaction upon which this suit is founded was as follows: On November 10, 1931, the company caused the following telegram to be delivered to the bank:

"Guadalajara, Nov. 10, 1931
"PEB,
   "Nogales
   "Say bank, quote: Three Three Five ship to J. P.
Oros, Empalme, twenty-five thousand pesos including
exactly two thousand in tostones to reach him Novem-
ber nineteenth without fail."

Upon receipt of this telegram the bank immediately
wired the Banco de Sonora as follows:

              "Nogales, Arizona, Nov. 10, 1931
"Banco de Sonora,
"Hermosillo, Sonora.
   "Two eight seven remit J. P. Oros railway pay-
master Empalme twenty five thousand pesos silver
including two thousand pesos in tostones to reach him
November nineteenth without fail answer."

And the Banco de Sonora agreed that it would make
the remittance as requested, but as a matter of fact
failed to do so, closing as insolvent on November
21st.   We think these facts are sufficient upon which
to determine the law of the case.

It is the contention of the company that when the
bank received the telegram requesting it to have the
25,000 pesos in Mexican silver shipped, by operation
of law this 25,000 pesos was taken out of the com-
pany's ordinary peso deposit and placed with the
bank as a special trust fund and did not become any
part of the general assets of the Bank when it closed
its door, and is therefore a preferred claim just as
much and on the same principle as if the company had
actually placed with the bank for safekeeping 25,000
pesos in Mexican silver, which silver was found in
the vaults of the bank when it closed.   In support
of its position it cites the following cases: *Oester-
reicher* v. *McNair*, (D. C.) 54 Fed. (2d) 798; *In re
Interborough Consol. Corp,* (C. C. A.) 288 Fed. 334,
32 A. L. R. 932; *Schoen* v. *Johnson,* 134 Kan. 612, 7
Pac. (2d) 117; *Davis* v. *McNair,* (C. C. A.) 48 Fed.

(2d) 494; *Ryan* v. *Phillips*, 3 Kan. App. 704, 44 Pac. 909; *Glicksberg* v. *Superintendent of Banks*, 234 App. Div. 539, 255 N. Y. Supp. 282; *State* v. *State Bank of Touhy*, 122 Neb. 582, 240 N. W. 925; *Legniti* v. *Mechanics' & Metals National Bank of New York*, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185. The general rule of law stated by appellant in regard to trust funds being a preferred claim is undoubtedly correct. It will be noted, however, that in each of the cases cited above the party claiming that a trust existed actually delivered to the alleged trustee, at the time it was claimed the trust arose the money which it was later claimed was a special trust fund, either by giving it the cash or exchange directly or else by giving a check on a general deposit of the claimant then with the trustee. The facts in the present case are very different. If the bank had been authorized to and had charged out from the company's account the 25,000 pesos immediately upon receipt of the telegram of November 10th there might be some force to the latter's argument, although even then there is strong authority that when it is understood by the parties that the bank is to use its own credit in some foreign place to meet the request of the purchaser that it is merely a sale of the bank's credit to the purchaser and not the establishment of a trust fund in his favor. *Legniti* v. *Mechanics' & Metals National Bank of New York, supra; Taussig* v. *Carnegie Trust Co.*, 213 N. Y. 627, 107 N. E. 1086; *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co. of New York*, 172 App. Div. 16, 157 N. Y. Supp. 955; *Katcher* v. *American Express Co.*, 94 N. J. L. 165, 109 Atl. 741; *Beecher* v. *Cosmopolitan Trust Co. et al.*, 239 Mass. 48, 131 N. E. 338. It is not necessary, however, to decide this question. The facts of the case show clearly that the company did not pay in advance for a service which was not performed, but

that at its request the bank was to pay for the service and reimburse itself after the service had been performed from the deposit of the company. Such a request was in effect a request for a loan by the bank to the company of 25,000 pesos, which was later to be repaid by a charge made against the company's deposit account with the bank. The company was to part with nothing of value until the services were performed, and as they never were performed it lost nothing.

Even were these things not true, however, there is another conclusive reason why no preference may be claimed. This court has held, in the case of *Jarvis* v. *Hammons*, 32 Ariz. 444, 259 Pac. 886, that the right to receive a preferential payment from a receiver of a bank depends among other things upon an affirmative showing that by reason of the transaction the actual physical assets coming into the hands of the receiver were augmented. It is obvious from the foregoing recital of the facts that the physical assets in the hands of the receiver of the bank were never augmented in the slightest degree by the transaction on which the claim was based. The peso account in the bank was based, with the exception of perhaps three or four pesos, entirely upon a credit given the bank by the Banco de Sonora for silver deposited with the latter by the company, but which silver never passed into the possession of the bank, nor was it ever intended by either the company or the bank that it should. It was understood by all parties, in view of the Mexican law above referred to, that the silver was to be given to the Banco de Sonora, a foreign corporation, and all that the bank was to receive or did receive was a credit with such foreign corporation which ultimately became, so far as the receiver of the bank is concerned, merely a claim against an insolvent bank in another country.

454

For the foregoing reasons, the judgment of the superior court of Santa Cruz county is affirmed.

ROSS, C. J., and McALISTER, J., concur.